IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JENA L. LATTIMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-00845-CV-W-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ALJ'S DECISION

Plaintiff Jena L. Lattimer seeks judicial review of the Commissioner of Social Security's denial of her application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including depressive disorder, anxiety disorder, and a history of polysubstance abuse, but she retained the residual functional capacity ("RFC") to perform past relevant work as a cleanup worker.

Because substantial evidence supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**Factual and Procedural Background**

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her SSI application on August 9, 2009, alleging a disability onset date of January 1, 2008. After the Commissioner denied her application, Plaintiff requested an ALJ hearing. On June 24, 2011, the ALJ found that the Plaintiff was not disabled. On July 26, 2012, the Social Security Administration Appeals Council denied Plaintiff's request for review, leaving

the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. 1383(c).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner

Plaintiff argues the ALJ erred at Steps Three and Four. With respect to Step Three, Plaintiff contends that the ALJ erred in finding that she failed to meet the intellectual disability listing. As for Step Four, Plaintiff faults the ALJ for discounting the opinion of her treating psychiatrist Dr. James True, M.D. ("Dr. True"). Both arguments lack merit.

**A. Substantial evidence supports the ALJ's Step Three analysis.**

Step Three requires an ALJ to analyze whether a claimant's severe impairments meet a disorder listed in 20 C.F.R. pt. 404, subpt. p, app. 1. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ answers in the affirmative, the claimant is deemed disabled and the sequential process ends. *See id.* Plaintiff contends that the ALJ should have determined that she met Listing 12.05C. This listing requires Plaintiff to demonstrate: "(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation in functioning." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

Here, the ALJ found Plaintiff failed to meet Listing 12.05C because "[t]he evidence does not establish that the claimant has objective medical findings that are commensurate with the criteria described in 12.05C, including no evidence of deficits in adaptive functioning initially manifested during the developmental period." R. at 16. Later in her opinion, the ALJ expounded upon this finding by addressing the only intelligence quotient ("IQ") scores located in the record. Based upon a one-time consultative examination, Plaintiff's retained psychologist Dr. Franklin Boraks, Ph.D. ("Dr. Boraks") assessed Plaintiff with a verbal IQ score of 64, a performance IQ score of 62, and a full scale IQ score of 60. The ALJ found these scores invalid

---

to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

because they conflicted with other record evidence suggesting Plaintiff enjoyed a higher functioning level. R. at 20.

The parties agree that Plaintiff satisfied the third requirement of Listing 12.05C. They disagree, however, on whether Plaintiff met the first two requirements—*i.e.*, whether she demonstrated a valid IQ between 60 and 70, and whether her alleged mental retardation manifested itself before age 22. The ALJ found these two requirements lacking, and the Court finds substantial evidence supports this determination.

The ALJ properly determined that the IQ scores rendered by Dr. Borak were invalid. "An ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior." *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001). Such is the case here. Dr. Borak based the scores solely upon his one-time evaluation of Plaintiff. R. at 191. And Dr. Borak's assessment arguably conflicts with Plaintiff's daily activities and behavior. For instance, Plaintiff reads and writes (albeit not well), uses public transportation, attends church, and shops. R. at 34, 39, 49, 143, 146, 155, 158, 196. More importantly, besides Dr. Borak, no other treating, examining, or reviewing psychologist or psychiatrist found Plaintiff suffered from such a low IQ. R. at 196, 201, 293. In fact, Plaintiff's treating psychiatrist Dr. True even indicated that Plaintiff did not exhibit "a low I.Q. or reduced intellectual functioning." R. at 293. Given the inconsistency between this record evidence and Dr. Borak's assessed scores, the ALJ did not err in disregarding Plaintiff's low IQ scores.

The record evidence also supports the ALJ's finding that Plaintiff's alleged mental retardation did not manifest itself prior to age 22. Once the low IQ scores are set aside, there exists little record evidence that Plaintiff exhibited any deficits in adaptive functioning, much

less deficits prior to age 22. Plaintiff points to evidence that she struggled with reading and writing and that she quit school in either the 7th or 8th grade. Although this suggests she struggled in school, it does not demonstrate her difficulties arose from her alleged mental retardation. On the contrary, the fact that she attended regular classes during elementary school undercuts her allegations of mental retardation. *See* R. at 43 (Plaintiff testifying that she attended regular classes, even though she believed the school should have placed her in special education courses). And other evidence—Plaintiff obtaining a driver's license, living independently, and attending parties and casinos, R. at 36, 39, 143—suggest she had little difficulties with adaptive functioning. *See Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004) ("Miles attended regular classes in high school, received grades of B, completed vocational training program, passed a driver's license examination, had driven a car, had lived independently, and had never been terminated from a job for lack of mental ability, but had been terminated because of lack of transportation or lack of work."). Thus, Plaintiff failed to satisfy the second requirement.

Because Plaintiff failed to meet the first two requirements of Listing 12.05C, the ALJ did not err at Step Three.

**B. The ALJ did not err in discounting Dr. True's opinion.**

Plaintiff next argues that the ALJ erred at Step Four in rejecting the opinion of her treating psychiatrist Dr. True. According to Plaintiff, the ALJ should have accorded the opinion significant, if not controlling, weight. The Court disagrees.

Dr. True treated Plaintiff for her psychological ailments, including depressive disorder and anxiety disorder. On May 12, 2010, Dr. True completed a mental residual functional capacity form which indicated Plaintiff suffered from slight limitations in activities of daily

5

living, moderate difficulties in maintaining social functioning, deficiencies in concentration, persistence, and pace, and repeated episodes of work-related decompensation. R. at 295. Dr. True also opined that Plaintiff exhibited a Global Assessment of Functioning ("GAF") score of 40. R. at 292.

A treating physician's opinion is typically entitled to controlling weight if it is well supported by, and not inconsistent with, other substantial evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). It, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). A treating physician's opinion is not afforded controlling weight when it is internally inconsistent, *Myers*, 721 F.3d at 525, or when it is inconsistent with, or unsupported by, the physician's own treatment notes. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Although an ALJ may discount a treating physician's opinion, the ALJ must provide "good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

Here, the ALJ provided several good reasons for discounting Dr. True's opinion and substantial evidence supports those reasons. First, Dr. True's opinion does not appear to be based on any objective medical evidence. For the most part, his opinion consists of nothing more than several pages of checked boxes with no citation to treatment notes and minimal narrative discussion. R. at 292-96; *see Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming an ALJ's rejection of an opinion because it was conclusory and in a checklist format). For instance, in the section prompting Dr. True to articulate his clinical findings supporting his decision, it merely states, "Patient with suicidal thoughts, crying, feels things can't go right." R. at 293. Putting aside the fact that this conclusory discussion does not explain how these findings

resulted in the assessed limitations, *see Wildman*, 696 F.3d at 964, it also demonstrates that Dr. True's opinion is based largely[2] on Plaintiff's subjective complaints, not objective medical evidence. Such reliance throws his opinion into question given Plaintiff's questionable credibility and tendency to exaggerate symptoms. *See* R. at 17-19 (ALJ noting inconsistencies between Plaintiff's subjective complaints and the record evidence); R. at 196 (examining psychologist Dr. Alan Israel noting that Plaintiff tended to exaggerate her symptoms); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (ALJ may discount an opinion if it relies upon a plaintiff's subjective complaints). The lack of objective medical evidence underlying Dr. True's opinion supports the ALJ's decision to discount it.

Second, Dr. True's opinion is inconsistent with his treatment notes. Although Dr. True opined that Plaintiff exhibited recurrent panic attacks and social withdrawal, he never documented any panic attacks or problems with socializing in his treatment notes. R. at 320, 336, 337, 339, 342, 344, 355-56, 366. As for work-related limitations, Dr. True opined that Plaintiff quite often exhibited deficiencies in concentration, persistence, and pace, yet his notes reveal that during her most recent visits she was pleasant and she demonstrated goal-directed speech, fair insight, and clear sensorium.[3] R. at 336, 355-56, 366. And despite Dr. True's notes containing minimal objective findings of significant mental symptoms, he continually assessed a GAF score of 40, which indicates "an impairment in reality testing or communication… or [a] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Pates-Fires v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2009) (citing Am. Psychiatric

---

[2] The only objective corroboration of these findings was Plaintiff's attempted suicide in August 2009. R. at 249-251. While this unfortunate incident demonstrates Plaintiff suffered from a severe mental impairment, it does not prove that this mental impairment imposed disabling functional limitations. And as the ALJ noted, during a visit with Dr. True only a month after the incident, Plaintiff was "bright eyed, pleasant, goal directed" and only "a little bit depressed." R. at 336. Thus, it appears Plaintiff's condition improved significantly.

[3] In the psychology field, sensorium generally refers to consciousness and is "sometimes used as a generic term for intellectual and cognitive functions." *PDR Medical Dictionary* 1598 (1st ed. 1995).

Ass'n *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994)). If Plaintiff were as limited as the GAF score suggests, Dr. True's notes would have contained more significant mental findings. Cumulatively, these conflicts provided a sound basis for the ALJ to discount Dr. True's opinion.

Finally, and most significantly, Dr. True's opinion conflicted with other, substantial evidence. First, contrary to Dr. True's conclusion that Plaintiff's severe anxiety led to significant deficits in social functioning, she had a boyfriend, attended parties, frequented casinos, and rode public buses. R. at 32, 34, 39, 49, 143, 146, 158, 362. Second, his opinion directly conflicted with the opinions of examining psychologist Dr. Alan Israel, Ph.D. ("Dr. Israel") and reviewing psychologist Dr. Keith Allen, Ph.D. ("Dr. Allen"). Neither Dr. Israel nor Dr. Allen found Plaintiff as limited as Dr. True's opinion suggests. R. at 195-97, 198-212. Given this conflict and the fact that Dr. Israel's and Dr. Allen's opinions included a more thorough narrative assessment which enjoyed more support in the record, the ALJ properly credited their opinions over Dr. True's. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) ("[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments 'are supported by better or more thorough medical evidence.'"). Thus, the ALJ did not err in discounting Dr. True's opinion.

## Conclusion

Because substantial evidence supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date: July 28, 2014                               /s/ Greg Kays
                                                          GREG KAYS, CHIEF JUDGE
                                                          UNITED STATES DISTRICT COURT